IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs May 4, 2010

## BARRY BROWN v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Shelby County
Nos. 04-02408, 04-01488    James M. Lammey, Jr., Judge**

---

**No. W2009-01490-CCA-R3-PC  - Filed July 27, 2010**

---

The Petitioner, Barry Brown, filed a petition for post-conviction relief attacking his convictions of three counts of aggravated robbery on the basis of ineffective assistance of trial counsel. Following an evidentiary hearing, the post-conviction court denied relief based upon its finding that the Petitioner had failed to prove his allegations by clear and convincing evidence. In this appeal as of right, the Petitioner contends that trial counsel was ineffective in failing to suppress his statement, in preparing for trial, and in failing to present any mitigating evidence at his sentencing hearing. Following our review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed.**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which ALAN E. GLENN and J.C. MCLIN, JJ., joined.

Andre B. Mathis, Memphis, Tennessee, attorney for appellant, Barry Brown.

Robert E. Cooper, Jr., Attorney General and Reporter; Cameron L. Hyder, Assistant Attorney General; William L. Gibbons, District Attorney General; and Lora Fowler, Assistant District Attorney General, attorneys for appellee, State of Tennessee.

## OPINION

A Shelby County jury convicted the Petitioner of three counts of aggravated robbery. The trial court merged two of the three counts and imposed consecutive sentences of thirty years for each of the remaining counts. State v. Barry Brown, No. W2005-01539-CCA-R3-CD, 2007 WL 494989 (Tenn. Crim. App. Feb. 16, 2007). On direct appeal, the Petitioner challenged the sufficiency of the convicting evidence, the trial court's failure to suppress the

Petitioner's pretrial statement, and the consolidation of the offenses into one trial; this court affirmed the Petitioner's convictions and the trial court's rulings. Id.

Although the facts of the Petitioner's case have already been discussed in this court's opinion affirming the convictions, we will provide the following factual summary to establish context for the Petitioner's issues on appeal. See id. The Petitioner was involved in a series of aggravated robberies in which he and various other people used their vehicles to crash into unsuspecting victims' vehicles. They would then rob the victims. In one such instance, a woman, Janice Hudson, was "bumped from behind by a black car." After she spoke with the Petitioner and another man, Mr. Walker, and found that there was no damage to her vehicle, she returned to her car. Before she was able to close her car door, the two men were on either side of her vehicle. Mr. Walker grabbed her car keys out of the ignition and held a knife to her throat while the Petitioner attempted to remove her jewelry and money from the car. The two eventually left the scene, and Ms. Hudson was able to summon help. In another instance, the Petitioner bumped his car into the back of John Campbell's car. Mr. Campbell was suspicious of the situation and would not get out of his car or let the Petitioner approach his car. Eventually, the Petitioner got back into his car and drove away. Mr. Campbell followed the Petitioner into a neighborhood in order to obtain the Petitioner's license plate number. As he turned into the neighborhood, the Petitioner attempted to crash into his car again. Mr. Campell swerved, and the Petitioner followed and crashed into the car until it was no longer operational. The Petitioner and another man robbed the victim and left.

Using the license plate number provided by Mr. Campbell, officers located the owner of the vehicle, Ronald Cox, who was in jail. Mr. Cox was the Petitioner's brother. The Petitioner was implicated in the robberies and eventually arrested after he was observed driving Mr. Cox's vehicle. After the Petitioner signed a Miranda waiver, he provided a statement in which he admitted that he committed two of the robberies. The Petitioner stated, "I'm good for two of them and somebody else did the rest of them." The Petitioner refused to handwrite a confession and ended the interrogation.

After his convictions were affirmed on appeal, the Petitioner filed a timely petition for post-conviction relief on January 15, 2008. On July 2, 2008, following the appointment of counsel, the Petitioner filed an amended petition for post-conviction relief alleging that his convictions were the result of the ineffective assistance of trial counsel.

At the evidentiary hearing, Mr. Cox testified that, if asked by trial counsel, he would have testified at his brother's sentencing hearing. He never spoke with trial counsel about testifying at the hearing even though he was present throughout the entire trial. If called to testify, he would have said, "[The Petitioner] is a good person and that, you know, he just got under the influence of drugs [and] made mistakes. You know. And if given an opportunity,

I'm quite sure that, with rehabilitation, that he would be a better person." On cross-examination, he admitted that he had several prior convictions for theft of property.

The Petitioner stated that trial counsel did not investigate the identification testimony in his case and that trial counsel did not prepare for trial. The Petitioner admitted that he was offered an agreement to serve thirty-five years; however, he rejected the agreement because he believed that he had been promised an agreement to serve twenty-five years. He complained that trial counsel never visited the Petitioner in jail and that, at trial, trial counsel "didn't perform worth nothing" and "let the prosecutor run the courtroom." Relative to the sentencing hearing, the Petitioner did not understand why Mr. Cox should testify on the Petitioner's behalf. Therefore, the Petitioner did not ask to have his brother subpoenaed to testify and decided to go forward with the hearing without his brother.

On cross-examination, the Petitioner admitted that he testified at the consolidation hearing that trial counsel subpoenaed all of his potential witnesses. He then explained that he was not familiar with the court system because he generally accepted the provided plea agreements and had never been to trial. He did not tell the trial court that he wanted other witnesses subpoenaed because he believed that trial counsel "wouldn't do it." He stated that trial counsel told him that he would try to get him a twenty-five year plea agreement but admitted that trial counsel was not responsible for the State's failure to accept the agreement.

Trial counsel testified that he had been an attorney for eleven years; that ninety percent of his practice consisted of criminal cases; and that he had tried approximately forty criminal trials. He filed "boiler-plate motions" in the Petitioner's case, hired an investigator, and "negotiated the case as best [as he] could." He gave the Petitioner copies of the discovery that he received and told the Petitioner about all of the offers that he received in the Petitioner's case. He also visited the Petitioner on many occasions in the courtroom. He discussed the case with the Petitioner; however, the Petitioner "had no defense." Trial counsel told the Petitioner that he would try to obtain a twenty-five year plea agreement; however, the Petitioner "didn't want to do that." Moreover, the State's attorney had only been offering agreements of forty and thirty-five years, and the Petitioner had refused all of the State's offers.

Trial counsel stated that he attempted to suppress the Petitioner's statement; however, the trial court ruled against him even though he timely objected to the statement at trial. At the sentencing hearing, trial counsel attempted to have Mr. Cox testify on the Petitioner's behalf; however, Mr. Cox was not present in the courtroom. The Petitioner told him to "[g]o ahead" without Mr. Cox and proceed with the sentencing hearing.

On cross-examination, trial counsel stated that he advised the Petitioner that the Petitioner could receive a thirty-year sentence because of his criminal history. Trial counsel said that he spoke with Mr. Cox outside of the courtroom on one occasion and that he attempted to present Mr. Cox as a witness at the sentencing hearing for purposes of mitigation. He did not subpoena Mr. Cox because he "wasn't real sure about the relationship between the [Petitioner and Mr. Cox]." Also, the Petitioner never asked him to call Mr. Cox. He remembered that he and the trial court advised the Petitioner that the case could be reset to a later date to allow Mr. Cox an opportunity to testify. However, the Petitioner insisted on proceeding with the hearing.

Relative to the Petitioner's trial, trial counsel testified that he did not attempt to suppress the identification testimony in the Petitioner's case because guilt "never was really [the] issue." Also, he did not believe that "there was a basis for a motion to suppress" the identification testimony. Trial counsel admitted that he did not file a motion to suppress the Petitioner's statement but did not believe that the Rules of Criminal Procedure required a pretrial hearing for suppression issues. Additionally, trial counsel insisted that the Petitioner's statement was really a "[s]pontaneous utterance" and not a statement for purposes of a suppression hearing. He did not believe "there was a chance in the world that it would be allowed," and he did not think the State "would try to elicit" the statement. He believed and argued that the statement was more prejudicial than probative because the jury would not understand the context of the statement.

Trial counsel stated that he hired a private investigator to assess the credibility of the witnesses and conduct "lexis-nexis" and "background" checks. He was unable to remember if he visited the Petitioner at the jail but stated that he spoke with the Petitioner "a lot in court." His trial strategy was to "make sure [the Petitioner's] rights weren't violated [and] [t]o hope the prosecution snatched the defeat out of the jaws of victory." He admitted that he did not hire an investigator to seek out mitigation evidence but stated that the Petitioner would not give him any suggestions regarding a possible mitigation defense. He believed that once the cases were consolidated, the Petitioner should have accepted any of the offered plea agreements. He even asked the trial court for more time to allow the Petitioner to "sleep on it overnight" before the Petitioner decided to go forward with the trial.

Following the evidentiary hearing, the post-conviction court denied the Petitioner's application for post-conviction relief. In its written order denying the petition, the trial court found that "the Petition failed to prove that trial counsel's conduct fell below an objective standard of reasonableness" and that the Petitioner "failed to offer proof that counsel's performance prejudiced the Petitioner." Additionally, the trial court found that the Petitioner's argument that trial counsel should have attempted to suppress the identification

testimony was without merit and that Mr. Cox's "testimony would not have changed the outcome at the sentencing hearing"

ANALYSIS

The burden in a post-conviction proceeding is on the petitioner to prove the factual allegation to support his grounds for relief by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f); See Dellinger v. State, 279 S.W.3d 282, 293-94 (Tenn. 2009). If the petitioner proves his grounds by clear and convincing evidence, the trial court must then determine whether trial counsel was ineffective according to Strickland v. Washington, 466 U.S. 668, 687 (1984). Dellinger, 279 S.W.3d at 293-94. On appeal, we are bound by the trial court's findings of fact unless we conclude that the evidence in the record preponderates against those findings. Fields v. State, 40 S.W.3d 450, 456 (Tenn. 2001). Because they relate to mixed questions of law and fact, we review the trial court's conclusions as to whether counsel's performance was deficient and whether that deficiency was prejudicial under a de novo standard with no presumption of correctness. Id. at 457.

Under the Sixth Amendment to the United States Constitution, when a claim of ineffective assistance of counsel is made, the burden is on the petitioner to show (1) that counsel's performance was deficient and (2) that the deficiency was prejudicial. Strickland v. Washington, 466 U.S. 668, 687 (1984); see Lockhart v. Fretwell, 506 U.S. 364, 368-72 (1993). Failure to satisfy either prong results in the denial of relief. Strickland, 466 U.S. at 697. In other words, a showing that counsel's performance falls below a reasonable standard is not enough; rather, the petitioner must also show that "there is a reasonable probability" that but for the substandard performance, "the result of the proceeding would have been different." Id. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. The Strickland standard has been applied to the right to counsel under article I, section 9 of the Tennessee Constitution. State v. Melson, 772 S.W.2d 417, 419 n.2 (Tenn. 1989).

In determining whether trial counsel's performance was deficient, this court has held that a "petitioner is not entitled to the benefit of hindsight, may not second-guess a reasonably based trial strategy by his counsel, and cannot criticize a sound, but unsuccessful, tactical decision made during the course of the proceedings." Adkins v. State, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994). "[D]eference to tactical choices only applies if the choices are informed ones based upon adequate preparation." Cooper v. State, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

## I. Motion to Suppress

The Petitioner contends that trial counsel was ineffective for failing to file a motion to suppress the Petitioner's statement when trial counsel "possessed adequate notice" that the State intended to introduce the statement into evidence. The Petitioner also contends that he did not sign his statement and that the absence of his signature indicates that he did not voluntarily, knowingly, and intelligently waive his Miranda rights when he confessed. The State responds that trial counsel was not deficient for failing to file a motion to suppress and that even if trial counsel had filed a motion to suppress the statement, the outcome of the trial would not have been different because the statement was admissible. To prevail, the Petitioner must establish that his statement was inadmissible; that trial counsel should have filed a motion to suppress; and that he was prejudiced by trial counsel's failure to file a motion to suppress his statement.

The Petitioner included the transcript of his trial in the record on appeal. The record reflects that trial counsel did not object to the admission of the Petitioner's statement prior to trial but that trial counsel requested a jury-out hearing in the middle of the trial. In the hearing, trial counsel argued that he was not given the statement but that he was only "given a supplement that says that [the Petitioner] made this utterance." The State responded that trial counsel did not file a timely motion to suppress and that there was not an actual written statement because the Petitioner refused to reduce his statement to writing. Trial counsel then contended that the Petitioner's statement was hearsay and was more prejudicial than probative because the statement referenced more than two robberies.

In the jury-out hearing at trial, Officer Timmie Wilson stated that the Petitioner signed an "advice of rights" form before talking with him. The Petitioner told Officer Wilson that he was "good" for two of the robberies but that someone else did the rest of them. When the Petitioner was asked to write his statement, the Petitioner refused and asked to leave. The trial court found that the first part of the statement, the fact that the Petitioner committed two of the robberies, was admissible. However, the trial court also found that the rest of the statement, the fact that someone else committed the other robberies, was inadmissible because it would be unfairly prejudicial for the jury to "know that he was present when other robberies similar to these were committed." The trial court believed that the first part of the statement was probative because the Petitioner was most likely admitting guilt to the two robberies discussed during the trial. In this court's opinion affirming the Petitioner's conviction on appeal, this court held that the trial did not err in allowing the statement into evidence because the Petitioner's statement was admissible as an admission by a party opponent, an exception to the hearsay rule. Barry Brown, 2007 WL 494989, at *6.

Both the Fifth Amendment to the United States Constitution and article I, section 9 of the Tennessee Constitution protect a person against compelled self-incrimination. "[T]he prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." Miranda v. Arizona, 384 U.S. 436, 444 (1966). Specifically, "[p]rior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed." Id. A defendant may waive those rights, but such waiver must be made "voluntarily, knowingly and intelligently." Id. The State has the burden of proving the waiver by a preponderance of the evidence. State v. Bush, 942 S.W.2d 489, 500 (Tenn. 1997).

As reflected in the trial court record, the Petitioner signed a Miranda rights waiver form before agreeing to talk to Officer Wilson. Consequently, the Petitioner's contention that he did not voluntarily waive his Miranda rights is unavailing. While we agree that the Petitioner never signed his statement, we note that the Petitioner never actually handwrote anything but his signature. Indeed, the Petitioner signed the Miranda waiver form and then told the officer that he was "good for two of them." He refused to handwrite a confession and ended the interrogation. Accordingly, we conclude that the statement was admissible because the Petitioner effectively waived his Miranda rights before confessing.

We do note that Rule 12 of the Tennessee Rules of Criminal Procedure provides that a motion to suppress evidence must be made prior to trial. Additionally, if a motion to suppress evidence is not made prior to trial, the issue is ordinarily waived. See Tenn. R. Crim. P. 12(f)(1). In the Petitioner's case, even though trial counsel did not file a motion to suppress, the trial court allowed trial counsel to argue that the statement was inadmissible hearsay. Given the trial court's ruling at trial and this court's opinion affirming that ruling, we believe that any attempt to file a motion to suppress the statement would have been unsuccessful. Accordingly, we conclude that the Petitioner has failed to prove that counsel should have filed a motion to suppress and that he was prejudiced by counsel's failure to file a motion to suppress his statement.

II. Inadequate Communication

The Petitioner contends that trial counsel was ineffective for failing to communicate with the Petitioner prior to trial and that trial counsel did not discuss trial strategies or even

explain his existing strategy to the Petitioner. The Petitioner also contends that trial counsel failed to investigate an eyewitness, who could have provided a defense. The State responds that the Petitioner failed to show how trial counsel's performance was deficient when the Petitioner did not have a defense and simply wanted a better plea agreement. The State also responds that both victims positively identified the Petitioner and that the Petitioner never asserted that he was innocent.

Trial counsel testified that he hired an investigator to investigate the potential State's witnesses and discussed the discovery materials that he received from the State with the Petitioner. Trial counsel stated that he met with the Petitioner on multiple occasions and that they focused on obtaining the best plea agreement possible because the Petitioner never asserted that he was innocent or told trial counsel to subpoena any witnesses. In fact, trial counsel stated that guilt was not really an issue in the Petitioner's case.

Relative to the Petitioner's assertion that trial counsel should have investigated the eyewitness testimony, we note that the Petitioner did not present any witnesses that would have negated the eyewitness testimony presented at trial. This court has long held that "[w]hen a petitioner contends that trial counsel failed to discover, interview, or present witnesses in support of his defense, these witnesses should be presented by the petitioner at the evidentiary hearing." Black v. State, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990). We cannot speculate as to what any potential witnesses may have said if presented. Id. Accordingly, we conclude that the Petitioner has failed to prove that trial counsel was ineffective in his communication with the Petitioner and in his investigation of the Petitioner's case.

### III. Sentencing Hearing

The Petitioner contends that trial counsel was ineffective for failing to secure Mr. Cox's testimony at the sentencing hearing. The Petitioner also contends that by failing to secure any mitigation testimony at the sentencing hearing, trial counsel failed to subject the State's case to any meaningful adversarial testing. The State responds that the Petitioner was a career offender and received a sentence within his range and that Mr. Cox's testimony would not have been beneficial for the Petitioner because Mr. Cox had his own criminal history.

The Petitioner urges us to apply the standards enunciated in United States v. Cronic, 466 U.S. 648 (1984) to the Petitioner's case. Essentially, the petitioner is arguing that the

trial court erroneously applied the Strickland standard for post-conviction analysis and should have analyzed his post-conviction allegations under the standards enunciated in Cronic, which addressed claims of per se ineffectiveness and raised a presumption of prejudice that absolves the petitioner from the need to prove the Strickland elements of ineffective assistance of counsel.

In Cronic, the United States Supreme Court identified three scenarios involving the right to counsel where the situation was "so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified." Cronic, 466 U.S. at 658-60. In those particular instances, there is an irrebuttable presumption of prejudice, and the petitioner need not meet the Strickland analysis to prove ineffective assistance of counsel. Id. at 662. Those situations include: (1) "the complete denial of counsel," where the accused is denied the presence of counsel at "a critical stage;" (2) where "counsel entirely fails to subject the prosecution's case to meaningful adversarial testing;" and (3) situations "where counsel is available to assist the accused during trial, [but] the likelihood that any lawyer, even a fully competent one, could provide effective assistance is so small that a presumption of prejudice is appropriate without inquiry into the actual conduct of the trial." Id. at 659-60.

The Petitioner contends that trial counsel's performance constitutes prejudice per se under the second prong of Cronic and that counsel's failure to present mitigation evidence at his sentencing hearing was equivalent to a complete denial of his Sixth Amendment right to counsel. In Bell v. Cone, 535 U.S. 685 (2002), the Supreme Court addressed the issue of when to apply the rule of Strickland or when to apply the rule of Cronic when analyzing claims of ineffective assistance of counsel. In holding that a petitioner's claim was subject to a Strickland analysis, the Court explained:

> When we spoke in Cronic of the possibility of presuming prejudice based on an attorney's failure to test the prosecutor's case, we indicated that the attorney's failure must be complete. We said "if counsel *entirely* fails to subject the prosecution's case to meaningful adversarial testing." Here, respondent's argument is not that his counsel failed to oppose the prosecution throughout the sentencing proceeding as a whole, but that his counsel failed to do so at specific points. For purposes of distinguishing between the rule of Strickland and that of Cronic, this difference is not of degree but of kind.

Bell, 535 U.S. at 697 (citations omitted and emphasis added).

In accordance with the Court's analysis in <u>Bell</u>, we conclude that the error alleged by Petitioner is subject to the rule of <u>Strickland</u>. There is no evidence to support the contention that the Petitioner was entirely without representation at his sentencing hearing as contemplated by the Court's decision in <u>Cronic</u>. The transcript of the sentencing hearing reflects that trial counsel attempted to obtain Mr. Cox's presence at the sentencing hearing and that the Petitioner chose to go forward without Mr. Cox as a witness, thereby declining an offer of the trial court to allow the Petitioner the opportunity to secure the appearance of Mr. Cox. The Petitioner even refused to testify on his own behalf. Trial counsel then argued that the Petitioner should be sentenced as a Range I, standard offender; however, the trial court found that the Petitioner was a Range III, persistent offender because of the Petitioner's extensive criminal history. Following our review, we cannot conclude that the post-conviction court erroneously applied the <u>Strickland</u> elements to the Petitioner's claims for post-conviction relief. Moreover, the evidence does not preponderate against the post-conviction court's finding that Mr. Cox's testimony would not have benefitted the Petitioner given Mr. Cox's own criminal history.

## CONCLUSION

In consideration of the foregoing and the record as a whole, the judgment of the post-conviction court is affirmed.

_____

D. KELLY THOMAS, JR., JUDGE